TUCKER ELLIS LLP
David J. Steele – SBN 209797
david.steele@tuckerellis.com
Steven E. Lauridsen – SBN 246364
steven.lauridsen@tuckerellis.com
Dina Roumiantseva – SBN 300576
dina.roumiantseva@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiffs
Coachella Music Festival, LLC, Future Festivals, LLC, and
Goldenvoice, LLC

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| COACHELLA MUSIC FESTIVAL, LLC; FUTURE FESTIVALS, LLC; and GOLDENVOICE, LLC,<br><br>                Plaintiffs,<br><br>        v.<br><br>VIP CONCIERGE LLC.; CRAIG BANASZEWSKI; and DOES 1-20,<br><br>                Defendants. | Case No.: 2:23-cv-2462<br><br>**COMPLAINT FOR:**<br>**(1) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114;**<br>**(2) FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125;**<br>**(3) COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501;**<br>**(4) VIOLATION OF CALIFORNIA UNFAIR COMPETITION AND TRADEMARK LAW**<br>**(5) COMMON LAW TORTIOUS INTERFERENCE OF CONTRACTUAL RELATIONSHIPS;**<br>**(6) COMMON LAW INDUCEMENT OF TRESPASS**<br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiffs Coachella Music Festival, LLC ("CMF"), Future Festivals, LLC ("Future Festivals"), and Goldenvoice, LLC, (collectively, "Plaintiffs") by and through their attorneys, Tucker Ellis LLP, file their complaint against Defendants VIP Concierge LLC aka VIP Concierge, Inc. aka VIP Award Show Tickets, Inc. ("VIP"), Craig Banaszewski ("Banaszewski" and, collectively with VIP, "Defendants"), and Does 1-20 ("Doe Defendants") for injunctive relief and damages as follows:

Plaintiffs allege as follows, upon actual knowledge with respect to themselves and their own acts, and on information and belief as to all other matters.

## INTRODUCTION

1.      Banaszewski is a serial trademark and copyright infringer who unlawfully uses the trademarks and copyrights of entertainment companies, while concurrently selling unauthorized, non-public tickets to events. Despite having been sued and enjoined multiple times for this conduct, Defendant Banaszewski and his company VIP are at it again, this time offering to sell non-transferrable backstage passes to Plaintiffs' upcoming festivals, despite prior warnings.

2.      Held annually,[1] Plaintiffs' Coachella Valley Music and Arts Festival (the "Coachella Festival") is one of the most critically acclaimed music and art festivals in the world, with multiple bands, artists, food vendors, and stages. The Coachella Festival is an annual event which attracts hundreds of thousands of attendees to Southern California each April.

3.      Also held annually[2] the weekend immediately following the Coachella Festival, Plaintiffs' Stagecoach Music Festival (the "Stagecoach Festival") is one of the most critically acclaimed country music and art festivals in the world, also featuring multiple bands, artists, food vendors, and stages.

---

[1] The Coachella Festival was not held in person in 2020 and 2021 due to the COVID-19 pandemic; however, a virtual Coachella Festival event was held instead, marketed as COUCHELLA. The Coachella Festival returned April 15-17, 2022 and April 22-24, 2022.

[2] The Stagecoach Festival was not held in person in 2020 and 2021 due to the COVID-19 pandemic; however, a virtual Stagecoach Festival event was held instead, marketed as STAGECOUCH. The Stagecoach Festival returned April 29-May 1, 2022.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

4.      All Coachella Festival and Stagecoach Festival passes are revocable licenses which, pursuant to terms under which they are issued, cannot be commercially resold nor can they be used for promotional or marketing purposes, absent Plaintiff's written consent. In addition to festival passes which are sold to the general public, a significantly smaller number of non-public festival passes are exclusively issued by Plaintiffs to performing artists and specified guests of Plaintiffs and the performing artists (aka "backstage passes"). Use of these non-public passes by unknown and unaffiliated or unvetted members of the general public creates significant safety and security concerns because the holders of such passes have the ability to access areas of the Coachella and Stagecoach Festivals which are purposely intended to be unavailable to the public for production purposes, as well as for the general safety and enjoyment of Plaintiffs' artists and their guests, and the smooth operation of each respective festival.

5.      Defendants intentionally trade on the goodwill of Plaintiffs' well-known COACHELLA and STAGECOACH trademarks and service marks while also infringing Plaintiffs' copyrighted material. More specifically, Defendants are unauthorized ticket touts (aka scalpers), who offer to sell non-public festival passes for the 2023 Coachella and Stagecoach Festivals via their websites at https://vipawardshowtickets.com/ and https://vipconcierge.com/. In addition to the unauthorized sale of festival passes, through their use of the COACHELLA and STAGECOACH trademarks and service marks, as well as Plaintiffs' copyrighted materials, Defendants' unauthorized transfer of these non-public passes directly violates Plaintiffs' license agreement with their authorized pass holders and induces those authorized pass holders to violate such license agreement. The subsequent purchaser of such passes from Defendants is both a trespasser and a potential safety and operational risk to the relevant festival and, at a minimum, such recipient is subject to denial of entry and/or removal from such festival.

6.      Despite being made aware by Plaintiffs in May 2015 of the harm inflicted upon Plaintiffs by Defendants' unlawful conduct, Defendants have now resumed trading on the goodwill of Plaintiffs' well-known COACHELLA and STAGECOACH trademarks

and service marks by offering to sell and/or actually selling unauthorized Coachella and Stagecoach Festival passes and inducing the original recipients of such passes to violate Plaintiffs' license agreement and the subsequent purchasers to act as trespassers. Plaintiffs are informed and believe and thereon allege that, in addition to Defendants having been previously put on notice by one or more of the Plaintiffs that Defendants' conduct is unlawful and harms the public, Defendant Banaszewski has previously been sued and permanently enjoined by this Court in at least three other lawsuits, wherein he was legally prohibited from carrying out nearly identical conduct in relation to events including the Grammys, Victoria's Secret Fashion Show, and Disney movie and television premieres, as discussed below.

7.     As a result of Defendants' recalcitrant and unlawful behavior, Plaintiffs have been forced to file this action (a) to protect the well-known COACHELLA and STAGECOACH trademarks and service marks from infringement; (b) to protect Plaintiffs' copyright in the 2023 Coachella Lineup Poster; (c) to prevent Defendants from (i) interfering with Plaintiffs' contractual relationships, (ii) inducing trespass, (iii) jeopardizing the safety of the public and Plaintiffs' artists and their guests, and (iv) damaging Plaintiffs' goodwill; and (d) to help ensure that Plaintiffs and their authorized guests, performers, and attendees can enjoy the uninterrupted operation of Plaintiffs' Coachella and Stagecoach Festivals.

## JURISDICTION AND VENUE

8.     This is an action for trademark and service mark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, trademark infringement and false designation of origin in violation the Lanham Act, 15 U.S.C. § 1125(a), copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501, unfair competition under the California Business and Professions Code § 17200, *et seq*., and violations of California common law.

9.     This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

10.     This Court has supplemental jurisdiction over the state law claims set forth herein under 28 U.S.C. §§ 1338(b) and 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

11.     This Court has personal jurisdiction over Defendants because (1) Defendants are residents of California and this judicial district; (2) Defendants conduct business within California and this judicial district; (3) the causes of action asserted in this Complaint arise out of Defendants' contacts with California and this judicial district; and (4) Defendants have caused tortious injury to Plaintiffs in California and this judicial district.

12.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of property that is the subject of the action is situated in this judicial district.

## THE PARTIES

13.     Plaintiff Coachella Music Festival, LLC is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business in Los Angeles, California. Coachella Music Festival, LLC owns the intellectual property rights to COACHELLA.

14.     Plaintiff Future Festivals, LLC is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business in Los Angeles, California. Future Festivals, LLC owns the intellectual property rights to STAGECOACH.

15.     Plaintiff Goldenvoice, LLC is a limited liability company organized and existing under the laws of the State of California, having a principal place of business in Los Angeles, California. Goldenvoice, LLC produces the Coachella and Stagecoach Festivals in conjunction with CMF and Future Festivals, LLC, respectively.

16.     On information and belief, Defendant Defendants VIP Concierge LLC aka VIP Concierge, Inc. aka VIP Award Show Tickets, Inc. is a limited liability company organized under the laws of California, having a principal place of business in Beverly Hills, California.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

17.     On information and belief, Defendant Craig Banaszewski is an individual residing in Beverly Hills, California and a member of VIP. As discussed further below, Banaszewski is the moving, active, conscious force behind the unlawful activity alleged in this complaint.

18.     Plaintiffs are not aware of the true names and capacities of Defendants named in this Complaint as Does 1-20, inclusive, and therefore brings this action against these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege these Defendants' true names and capacities when ascertained.

19.     At all times material to this action, each of the Defendants was the agent, servant, employee, partner, *alter ego*, direct participant, subsidiary, or joint venturer of each of the other Defendants, and the acts of each of the Defendants were in the scope of such relationship; in doing the acts and failing to act as alleged in this Complaint, each of the Defendants acted with the knowledge, permission, and the consent of each of the other Defendants; and, each of the Defendants aided and abetted the other Defendants in the acts or omissions alleged in this Complaint.

## PLAINTIFFS' COACHELLA MUSIC FESTIVAL, STAGECOACH MUSIC FESTIVAL, COPYRIGHT, TRADEMARKS, SERVICE MARKS

20.     CMF owns and, with Goldenvoice, LLC, produces the Coachella Festival, one of the country's premier music and arts festivals. Printouts of several news stories about the Coachella Festival are attached to this Complaint as Exhibit 1. The caption from one photograph accompanying a story from CNN reads, "[a]n aerial view taken from a helicopter on Sunday shows how big the [2011] festival is."

21.     Held annually at the Empire Polo Club in the beautiful Southern California desert, the Coachella Festival is one of the most critically acclaimed music festivals in the world. The entire festival site, which includes the festival grounds, on-sight camping, parking and support operations, encompass over 800 acres.

22.     The Coachella Festival was first held in October 1999 and drew some 25,000 attendees into the California desert in Southern California. Over the years,[3] both the Coachella Festival's attendance and its prominence have grown. Attendance to the Coachella Festival, aggregated over the multi-day event, now totals nearly 750,000 attendees per year.

23.     The Coachella Festival mixes some of the most groundbreaking artists from all genres of music along with a substantial selection of art installations from all over the world. The Coachella Festival attracts some of the world's biggest mega-stars to perform. The list of artists who have performed include: AC/DC, Beyoncé, Beastie Boys, Bjork, Cardi B, Coldplay, Daft Punk, Dr. Dre & Snoop Dogg, Foo Fighters, Guns N' Roses, Jane's Addiction, Jay-Z, Lady Gaga, Leonard Cohen, Madonna, Paul McCartney, Prince, Radiohead, Red Hot Chili Peppers, The Cure, Tool, and The Weeknd, to list just a few.

24.     The Coachella Festival is about more than just music. The festival's venue also includes camping facilities for some 15,000 attendees (complete with a karaoke lounge and a general store), and a curated selection of food and beverages from a wide variety of restaurants, ranging from pizza to a catered multi-course sit-down dining experience. The festival also features an extensive art exhibit which includes many pieces of art (including sculpture and so-called "interactive" art). The music, the food, the art, and of course, the fellowship of other attendees, taken together, makes the Coachella Festival more than just a concert to attend—it truly is an experience.

25.     Plaintiffs own and operate the Coachella Festival's website, available at www.coachella.com. This website received over 20 million page views in 2019, hosting nearly 8.5 million users over nearly 12 million sessions. Between January 1, 2022 and May 1, 2022, the www.coachella.com website received almost 16 million page views and hosted over 6 million users in over 10 million sessions. Screen captures of Plaintiffs'

---

[3] The Coachella Festival was next held in April 2001 and has been held annually thereafter, except as mentioned above in 2020 and 2021, when the festival was postponed due to the COVID-19 pandemic.

Tucker Ellis llp

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

current website, available at www.coachella.com, are attached to this Complaint as Exhibit 2.

26.     Plaintiffs also produce a mobile app for the Coachella Festival for use on iPhone / iPad and Android devices. Screen captures of Plaintiffs' app from iTunes and Google are attached to this Complaint as Exhibit 3.

27.     Plaintiffs and their affiliates have invested substantial sums in media and related content to promote the Coachella Festival.

28.     As part of their promotional efforts for the Coachella Festival, each year Plaintiffs create and release an original lineup poster. Each annual lineup poster includes names of musical artists, the dates they perform, and a design centered around the mountains and palm trees that provide the renowned backdrop to the Coachella Festival's acclaimed venue.

29.     CMF owns the exclusive copyright to each annual lineup poster, and CMF owns United States Copyright Registration No. VA0002338141 for the 2023 Coachella Lineup Poster ("Copyrighted Poster"). Copies of this registration certificate and of the deposit copy of the 2023 lineup poster are attached as Exhibit 4.

30.     Plaintiffs also extensively promote their Coachella Festival through a variety of media, including on numerous social media sites such as YouTube, Facebook, Twitter, Instagram, and TikTok. Screen captures of Plaintiffs' YouTube, Facebook, Twitter, Instagram, and TikTok accounts are attached to this Complaint as Exhibit 5. As can be seen from Exhibit 5, Plaintiffs' YouTube account has over 2.4 million subscribers; their Facebook page has over 2.4 million followers; their Twitter account has over 1 million followers; their Instagram account has over 2.4 million followers; and their TikTok has over 236,000 followers.

31.     An Internet search using the Google search engine for the term "Coachella Music Festival" provided almost 19 million hits; a cursory review of the results shows nearly every hit was related to Plaintiffs' festival; and the first non-sponsored search result was to Plaintiffs' www.coachella.com website.

32.     Tracked online media impressions (advertisements) for the Coachella Festival from April 8, 2022 to April 29, 2022 exceeded almost 112 billion impressions.

33.     Over 500 credentialed journalists, from print media, radio, television, and the Internet reported live from the 2022 Coachella Festival. The journalists represented media outlets such as Time, Billboard, and the BBC.

34.     Plaintiffs own the exclusive trademark and service mark rights to the distinctive COACHELLA trademark and service mark, having used the mark in connection with the festival and related goods and services since the first Coachella Festival in 1999.

35.     Similarly, Plaintiffs own the exclusive trademark and service mark rights to the distinctive COACHELLA (stylized) trademark and service mark, having used the mark in connection with the festival and related goods and services since the first festival in 1999. A copy of the stylized mark is depicted below:

## COACHELLA

36.     Plaintiffs also own the exclusive trademark and service mark rights to the distinctive COACHELLA VALLEY MUSIC AND ARTS FESTIVAL trademark and service mark, having used the mark in connection with the festival and related goods and services since the first festival in 1999.

37.     The COACHELLA, COACHELLA (stylized), and COACHELLA VALLEY MUSIC AND ARTS FESTIVAL marks are collectively referred to in this Complaint as "the COACHELLA Marks."

38.     Plaintiffs' use of the COACHELLA Marks has been extensive, continuous, and substantially exclusive since 1999.

39.     The Coachella Festival and the COACHELLA Marks have been the subject of extensive newspaper articles, magazine articles, television and Internet news stories. *See* Exhibit 1.

40.     Plaintiffs have made, and continue to make, a substantial investment of time, effort and expense in the production and promotion of the Coachella Festival and the COACHELLA Marks.

41.     The COACHELLA Marks are unique and distinctive and, as such, designate a single source of origin.

42.     As a result of Plaintiffs' efforts and use, the COACHELLA Marks have come to be recognized by the public and members of the trade as being associated exclusively with Plaintiffs and the Coachella Festival.

43.     Plaintiffs expend substantial effort and expense to protect the COACHELLA Marks' distinctiveness in the marketplace. Plaintiffs extensively police unauthorized use of the COACHELLA Marks and have sent countless cease and desist letters, and made countless telephone calls, to combat misuse or unauthorized use of the COACHELLA Marks.

44.     Plaintiffs have also filed numerous domain name complaints to remedy the registration or use of identical or confusingly similar Internet domain names.

45.     Based on Plaintiffs' use, including the use described herein, Plaintiffs own extensive common law trademark rights in the COACHELLA Marks.

46.     In addition to these extensive common law rights, CMF owns numerous United States registrations for the COACHELLA Marks. Specifically, CMF owns:

a.  United States Service Mark Registration No. 3,196,119 for COACHELLA. This Registration is incontestable under 15 U.S.C. § 1065;

b.  United States Trademark Registration No. 4,270,482 for COACHELLA. This Registration is incontestable under 15 U.S.C. § 1065;

c.  United States Service Mark Registration No. 3,196,129 for COACHELLA (stylized). This Registration is incontestable under 15 U.S.C. § 1065;

d.  United States Trademark Registration No. 4,266,400 for COACHELLA (stylized). This Registration is incontestable under 15 U.S.C. § 1065;

e.  United States Trademark Registration No. 5,235,905 for COACHELLA;

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

f.   United States Trademark Registration No. 5,235,903 for COACHELLA (stylized);

g.   United States Service Mark Registration No. 3,196,128 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065;

h.   United States Trademark Registration No. 3,965,563 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065; and

i.   United States Trademark Registration No. 4,008,651 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065.

The registration certificates for each of these registrations are included as Exhibit 4 to this Complaint.

47.   Having been widely promoted to the general public, and having exclusively identified Plaintiffs and their goods and services, the COACHELLA Marks symbolize the tremendous goodwill associated with Plaintiffs and Plaintiffs' festival.

48.   The COACHELLA Marks are a property right of incalculable value.

49.   Plaintiffs also own and produce the Stagecoach Festival, one of the country's premier country music and arts festivals. Printouts of several news stories about the Stagecoach Festival are attached to this Complaint as Exhibit 6.

50.   Held annually on the weekend immediately following the Coachella Festival at the Empire Polo Club, the Stagecoach Festival was first held in 2007 and has been held continuously thereafter.[4]

51.   The Stagecoach Festival features many of the biggest artists in country music. Some of the artists who have performed include: George Strait, Kenny Chesney, Garth Brooks, Trisha Yearwood, Blake Shelton, Carrie Underwood, George Jones, Dwight

---

[4] As mentioned above, the Stagecoach Festival was not held in person in 2020 and 2021, when the festival was postponed due to the COVID-19 pandemic.

Yoakam, Reba, Eric Church, Shania Twain, Charley Pride, Emmylou Harris, Merle Haggard, Charlie Daniels Band, Miranda Lambert, Eagles, John Fogerty, Glen Campbell, Willie Nelson, Jason Aldean, Luke Combs, Chris Stapleton, Lady A, Kane Brown, Brad Paisley, Alabama, Old Dominion, Keith Urban, and Little Jimmy Dickens, to list only a very few. Screen captures of some of the lineup cards from Stagecoach are attached to this Complaint as Exhibit 7.

52.    Like the Coachella Festival, The Stagecoach Festival is about more than just country music. The festival's venue also includes camping facilities for some 15,000 attendees (complete with a post office and a general store), and an amazing selection of food and beverages from a wide range of restaurants, including Guy Fieri's ever popular Stagecoach Smokehouse. The Stagecoach Festival also features numerous other attractions, including a dance hall (featuring dance lessons), a kids area with arts & crafts, and an instrument petting zoo, and other themed shops and interactive experiences, including the Compton Cowboys. Taken together, the music, the food, the themed attractions, and the fellowship of other attendees elevate the Stagecoach Festival beyond a concert to attend and into an immersive multi-day experience.

53.    Plaintiffs own and operate the Stagecoach Festival's website, available at www.stagecoachfestival.com. Between January 1, 2019 and May 1, 2019, the website received over 15.8 million pageviews and has hosted approximately 6.6 million users in over 9.3 million sessions. Screen captures of Plaintiffs' current website, available at www.stagecoachfestival.com, are attached to this Complaint as Exhibit 8.

54.    Plaintiffs also produce a mobile app for the Stagecoach Festival for use on iPhone / iPad and Android devices. Screen captures of Plaintiffs' app from iTunes and Google are attached to this Complaint as Exhibit 9.

55.    Plaintiffs extensively promote their Stagecoach Festival through a variety of media, including on numerous social media sites such as YouTube, Facebook, Twitter, Instagram, and TikTok. Screen captures of Plaintiffs' YouTube Facebook, Twitter, Instagram, and TikTok accounts are attached to this Complaint as Exhibit 10. As can be

seen from Exhibit 10, Plaintiffs' YouTube account has over 16,000 subscribers; their Facebook page has over 232,000 followers; their Twitter account has over 42,400 followers; their Instagram account has over 210,000 followers; and their TikTok has over 18,000 followers.

56.   Plaintiffs have invested substantial sums in media and related content to promote the Stagecoach Festival.

57.   An Internet search using the Google search engine for the term "Stagecoach Music Festival" provided over 8.2 million hits; a cursory review of the results shows nearly every hit was related to Plaintiffs' festival; and the first non-sponsored search result was to Plaintiffs' www.stagecoachfestival.com website.

58.   Tracked online media impressions (advertisements) for the Stagecoach Festival from April 22, 2022 to May 6, 2022 exceeded 5.8 billion impressions.

59.   Plaintiffs own the exclusive trademark and service mark rights to the distinctive STAGECOACH trademark and service mark, having used the mark in connection with the festival and related goods and services since the first Stagecoach Festival in 2007.

60.   Similarly, Plaintiffs own the exclusive trademark and service mark rights to the distinctive STAGECOACH (stylized) trademark and service mark, having used the mark in connection with the festival and related goods and services since the first festival in 2007. A copy of the stylized mark is depicted below:

# STAGECOACH

61.   The STAGECOACH and STAGECOACH (stylized) marks are collectively referred to in this Complaint as "the STAGECOACH Marks" and, together with the COACHELLA Marks, "Plaintiffs' Marks."

62.   Plaintiffs' use of the STAGECOACH Marks has been extensive, continuous, and substantially exclusive since 2007.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

63.     The Stagecoach Festival and the STAGECOACH Marks have been the subject of extensive newspaper articles, magazine articles, television and Internet news stories. *See* Exhibit 6.

64.     Plaintiffs have made, and continue to make, a substantial investment of time, effort and expense in the production and promotion of the Stagecoach Festival and the STAGECOACH Marks.

65.     The STAGECOACH Marks are unique and distinctive and, as such, designate a single source of origin.

66.     As a result of Plaintiffs' efforts and use, the STAGECOACH Marks have come to be recognized by the public and members of the trade as being associated exclusively with Plaintiffs and the Stagecoach Festival.

67.     Plaintiffs expend substantial effort and expense to protect the STAGECOACH Marks' distinctiveness in the marketplace. Plaintiffs extensively police unauthorized use of the STAGECOACH Marks and have sent countless cease and desist letters, and made countless telephone calls, to combat misuse or unauthorized use of the STAGECOACH Marks.

68.     Plaintiffs have filed numerous domain name complaints to remedy the registration or use of identical or confusingly similar Internet domain names.

69.     Plaintiffs have filed numerous oppositions to other similar marks.

70.     Based on Plaintiffs' use, including the use described herein, Plaintiffs own extensive common law trademark rights in the STAGECOACH Marks.

71.     In addition to these extensive common law rights, Plaintiff Future Festivals owns United States registrations for the STAGECOACH Marks. Specifically, Future Festivals owns:

      a.  United States Trademark Registration No. 5,226,016 for STAGECOACH; and

      b.  United States Trademark Registration No. 5,226,017 for STAGECOACH (stylized);

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

The registration certificates for each registration are included in Exhibit 4 to this Complaint.

72.     Having been widely promoted to the general public, and having exclusively identified Plaintiffs and their goods and services, the STAGECOACH Marks symbolize the tremendous goodwill associated with Plaintiffs and Plaintiffs' festival.

73.     The STAGECOACH Marks are a property right of incalculable value.

74.     There are various categories of passes to the Coachella Festival and to the Stagecoach Festival. The various categories of passes to the Coachella Festival share similar names and qualities to the various categories of passes to the Stagecoach Festival.

## PLAINTIFFS' FESTIVAL PASSES

75.     For the Coachella Festival, two types of publicly available passes include General Admission and VIP passes. Only General Admission passes and VIP passes are made available for sale to the general public. For the Stagecoach Festival, publicly available passes include General Admission, Corral Reserved Seating, and Corral Standing Pit passes, which are made available for sale to the general public.

76.     Multiple types of non-public passes for each of the festivals include, but are not limited to, Artist Passes and Guest Passes. Artist Passes and Guest Passes are not available for sale to the general public.

77.     Artist Passes are provided by Plaintiffs to artists performing at the relevant festival.

78.     Guest Passes are provided by Plaintiffs to guests of the relevant festival and of the performing artists of the relevant festival.

79.     Plaintiffs utilize categories of passes for the Coachella Festival and Stagecoach Festival for a number of reasons, but primarily for security and access control. Pass holders are granted access to various areas of the relative festival based on the category of pass they hold. For example, while all holders of valid General Admission passes and VIP passes have access to all areas designated for general admission, holders of VIP and Corral passes are also granted access to additional areas of the relative festival.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Artist Passes and Guest Passes, on the other hand, may access all public areas of the festival, as well as access to restricted "backstage" and production/stage areas that are not open to the general public.

80.   By restricting access to certain areas within the Coachella and Stagecoach Festivals, Plaintiffs are better able to protect the festivals' attendees and artists and to ensure the successful operation of the festivals.

81.   Each Coachella Festival pass and Stagecoach Festival pass (regardless of category) is worn around the wrist by the user and includes a locking device. Once installed around the wrist, the wristband is designed not to be removable; this feature prevents the transfer of the pass from an authorized user to an unauthorized user.

82.   Each pass (regardless of category) plainly states on its face, that the pass is subject to the wristband terms of use ("Terms"), which are accessible on the applicable festival's website, as well as at https://www.aegpresents.com/festival-ticket-terms/. Screen captures of the wristbands and Terms are attached as Exhibit 11. The Terms explicitly prohibit unauthorized transfers of Coachella Festival passes and/or Stagecoach Festival passes, contain a clause agreeing that their breach will cause irreparable injury, contain a clause that the pass holder consents to injunctive relief to prevent or mitigate that irreparable injury, and contain the following language:

**UNAUTHORIZED TRANSFERS PROHIBITED**

All publicly sold Tickets [defined to include tickets, wristbands, passes, permissions, authorizations and entry methods] are for use by the original authorized purchaser and their invited guest(s) only (each an "Authorized Purchaser"), and are not transferable by the Authorized Purchaser, any of their invited guests, or any other person. **Likewise, all Tickets provided to performing artists, production personnel, vendors, sponsors, and other guests of the Event producer** (each an "Authorized Recipient"), are for use by the Authorized Recipient and his or her invited guest(s) only, and **are not transferable** by the Authorized Recipient, his or her invited guest(s), or any

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

other person. Authorized Purchasers and Authorized Recipients are referred to individually as a "User." Tickets obtained from unauthorized sources may be counterfeit and are worthless.

Except as provided herein, **Tickets may not be sold, transferred**, or used for any form of commercial or trade purposes, including but not limited to promotions, contests, commercial or advertising purposes, housing, hotels, vacation rentals, sweepstakes, charitable giveaways, or other activities **absent the Event producer's prior written consent.** No sponsorship, on site marketing, sampling, vending, coupon/product distribution, or other promotional activity may be conducted at the Event (inclusive of parking lots), absent the Event producer's prior written approval in each instance. **Any Tickets used in violation of this provision shall be deemed revoked and void, and their bearers deemed trespassers at the Event**.

**Resale or attempted resale of Tickets is grounds for termination of the license and cancellation of the Ticket**.

\*      \*      \*

**IRREPARABLE INJURY AND CONSENT TO INJUNCTIVE RELIEF**

Any breach of these Terms by the User will cause irreparable injury to Event producer and User consents to injunctive relief to prevent or mitigate any irreparable injury.

Ex. 11 (emphasis added).

## **DEFENDANTS' UNLAWFUL CONDUCT**

**A.     Defendants' Unauthorized Sale of Passes**

83.     On information and belief, Defendants are scalpers of exclusive, non-public tickets and event passes; Defendants induce individuals to sell their tickets or passes to non-public events, such as after parties for the Oscars or Golden Globes, or non-public tickets and passes to public events, such as the Kentucky Derby, to Defendants, and then offer to sell and/or sell the non-public tickets and/or event passes to the public at a

premium. On further information and belief, Defendant Banaszewski is a member of Defendant VIP. Screenshots of Defendants' websites, available at https://vipconcierge.com/ and https://vipawardshowtickets.com/, which display Defendants' advertisements for "COACHELLA ULTIMATE ACCESS" and "STAGECOACH COUNTRY MUSIC FESTIVAL ALL ACCESS & PARTIES," are attached to this Complaint as Exhibit 12.

84.   Defendants are offering to sell and/or are selling Coachella Festival passes, including Artist, and Guest passes. Specifically, Defendants have advertised: "Coachella ARTIST/GUEST Pass (Weekend 1)"; "Coachella ARTIST/GUEST Pass Weekend 2 (free preferred parking pass with purchase of 2 or more Weekend 2 Artist/Guest passes!)"; and "Coachella ARTIST 'A' PASS (Weekend 2) ONLY 2 PAIRS AT THIS SPECIAL PRICE!" Defendants advertise, offer to sell, and/or sell such non-transferrable Coachella Festival passes via their websites, available at https://vipconcierge.com/exclusive-events/coachella-ultimate-access-vip-parties/                        and https://vipawardshowtickets.com/coachella-ultimate-access-vip-parties/. Screenshots of these websites are attached to this Complaint as Exhibit 13. Both of these websites also contain the link "DOWNLOAD DETAILED INFO PDF," which downloads a PDF version of Plaintiffs' Copyrighted Poster. *Cf.* Exhibit 4.

85.   Defendants are also offering to sell and/or are selling Stagecoach Festival passes, including "2023 Stagecoach Country Music Festival, April 28th-April 30th, 2023: ARTIST PASS (SPECIAL LIMITED OFFER!)"; and "2023 Stagecoach Country Music Festival, April 28th-April 30th, 2023: ARTIST PARKING (parking only; covers all 3 days; does not include festival passes)." Defendants advertise, offer to sell, and/or sell these non-transferable Stagecoach Festival passes via their websites, available at https://vipconcierge.com/events/stagecoach-country-music-festival-all-access-and-parties/ and https://vipawardshowtickets.com/stagecoach-country-music-festival-all-access-and-parties/. Screenshots of these websites are attached to this Complaint as Exhibit 14.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

86. Neither VIP nor Banaszewski were issued any passes to either the 2023 Coachella Festival or the 2023 Stagecoach Festival.

87. Defendants have received or will receive any passes sold or offered for sale on Defendants' websites from one or more of the Doe Defendants.

88. Notwithstanding the prohibition against unauthorized transfer of Coachella and Stagecoach Festival passes, Defendants not only sell and/or offer for sale those passes, but Defendants also use Plaintiffs' Marks and Copyrighted Poster in connection with their offers for sale and/or sale of Coachella Festival passes and Stagecoach Festival passes. Defendants' unlawful use of Plaintiffs' Marks and Copyrighted Poster has confused and deceived, and continues to confuse and deceive, consumers into believing that the passes sold and offered for sale by VIP and Banaszewski are valid for entry into the 2023 Coachella and Stagecoach Festivals when they are not.

89. Safety and security of Plaintiffs' festivals is one of Plaintiffs' primary concerns. Plaintiffs take the safety and security of their festivals seriously. Plaintiffs investigate a variety of issues and invalidate backstage passes which are transferred or sold without authorization.

**B.   Defendants' Infringement of Plaintiffs' Intellectual Property**

90. Via Defendants' attempts to perpetrate the unauthorized transfer of Coachella and Stagecoach Festival passes, Defendants are also infringing Plaintiffs' intellectual property rights by utilizing Plaintiffs' Marks and Copyrighted Poster without authorization.

91. By advertising Coachella and Stagecoach Festival passes in connection with Plaintiffs' COACHELLA Marks and STAGECOACH Marks, respectively, Defendants have caused, and continue to cause, members of the public to be confused or deceived into believing that Defendants are associated with, and/or authorized to sell Coachella Festival and/or Stagecoach Festival passes by, Plaintiffs. In fact, Defendants are not authorized to transfer or sell passes to the Coachella Festival or the Stagecoach Festival.

92. Defendants are neither affiliated with Plaintiffs, nor with the Coachella Festival, nor with Stagecoach Festival.

93.     Defendants are not licensed to use Plaintiffs' Marks.

94.     Defendants have constructive notice of Plaintiffs' rights in Plaintiffs' federally registered COACHELLA Marks and STAGECOACH Marks under 15 U.S.C. § 1072 as well as actual notice due to Banaszewski's prior infringement about which Plaintiffs previously contacted him in 2015, as discussed further below.

95.     Defendants' use of the Plaintiffs' Marks to market their Coachella and Stagecoach Festival passes was done with actual knowledge of the Plaintiffs' Marks.

96.     Defendants make available for download Plaintiffs' Copyrighted Poster, thereby unlawfully reproducing, distributing, displaying, and causing the unlawful reproduction of, Plaintiffs' copyrighted material.

97.     Defendants are not licensed to reproduce, distribute, display, or otherwise use, reproduce, or grant others the right to reproduce or use Plaintiffs' Copyrighted Poster.

## C.     Defendants' False and Misleading Statements

98.     In addition to infringing Plaintiffs' Marks and copyright in the Copyrighted Poster, Defendants' statements on their websites are false and misleading. Neither VIP nor Banszewski discloses that Coachella and/or Stagecoach Festival passes offered for sale and/or sold by or through Defendants are invalid and that any unauthorized transfer is unlawful, will automatically render the passes void, and may subject the unauthorized pass holders to ejection from the Coachella Festival and/or the Stagecoach Festival as trespassers. By using a false and unauthorized endorsement to offer to sell and/or sell Coachella and Stagecoach Festival passes, Defendants are causing members of the public to be confused or deceived into believing that Plaintiffs' have authorized Defendants to engage in such conduct when in fact they have not. The false and misleading representations that Defendants have made and continue to make in connection with commercial exploitation of Defendants' sales misrepresent the qualities of the goods Defendants are offering to sell and/or selling—purportedly valid Coachella Festival and/or Stagecoach Festival passes that in fact are invalid upon transfer or sale.

99. Moreover, Defendants falsely and misleadingly state on their website that Stagecoach Festival "[t]ickets are already sold out, but that's when VIP Concierge rises to the occasion with a few different VIP packages for you to choose from." By making a false statement that Stagecoach Festival passes are sold out, Defendants are causing members of the public to be confused and deceived into incorrectly believing that Defendants' passes, which aside from being invalid and priced above face value, are the public's only option for purchasing passes to the Stagecoach Festival. The false and misleading representations that Defendants have made and continue to make misrepresent the qualities of the goods Defendants are offering to sell and/or are selling—namely, that a consumer's purportedly only option to attend the Stagecoach Festival is to purchase passes from Defendants when in fact such passes are actually invalid upon transfer or sale. Screenshots of Defendants' false and misleading statements are attached to this Complaint as Exhibit 14.

100. Defendants are well aware of Plaintiffs' restrictions on unauthorized transfers of Coachella and Stagecoach Festival passes, yet Defendants continue their unlawful activity despite knowing the harm it causes to both (i) the unwitting members of the public, who pay for, among other things, the passes, travel, and lodging expenses, only to be refused entry—or worse, ejected from—the Coachella Festival and/or the Stagecoach Festival, and (ii) Plaintiffs, whose goodwill and reputation suffer as a result of the negative attention that results from their having to exclude unauthorized pass holders from their event, and are thereby harmed.

**D.    Defendants' Prior Interactions with Plaintiffs**

101. Defendant Banaszewski and his now dissolved company, Hollywood Entertainment Group LLC dba VIP Concierge, Inc. ("HEG"), previously used the COACHELLA Marks and the copyrighted 2015 Coachella Lineup Poster in connection with the unauthorized sale of Coachella Festival passes to the 2016 Coachella Festival.

102. On May 29, 2015, Plaintiffs sent Banaszewski and HEG a letter informing them of their infringing use of the COACHELLA Marks and the copyrighted 2015 Coachella Lineup Poster as well as their unauthorized resale of Coachella Festival passes

and unlawful inducement of Coachella Festival licensees (e.g., a purchaser of a pass, a guest of a performer or of Plaintiffs, or a performer) to breach their license agreement with Plaintiffs (the "2015 Letter"). In the 2015 Letter, Plaintiffs demanded Banaszweski and HEG immediately cease any and all unlawful use of Plaintiffs' intellectual property and unauthorized offering to sell and/or sale of Coachella Festival passes.

103.  Following receipt of the 2015 Letter, Defendants ceased their unlawful use of Plaintiffs' intellectual property and their unauthorized offering to sell and/or sale of 2016 Coachella Festival passes on their former website, thevipconcierge.com, which Plaintiffs recently discovered now redirects to vipconcierge.com, but apparently it was only temporary, as Defendants are currently offering to sell the restricted Coachella and Stagecoach Festival passes.

104.  At least as early as March 2023, Banaszewski, together with VIP, have since resumed the unlawful use of Plaintiffs' intellectual property with their unauthorized offer for sale and/or sale of 2023 Coachella and Stagecoach Festival passes on their websites, vipconcierge.com and vipawardshowtickets.com, making Defendants' conduct knowing and willful.

**E.     Defendants' Long History of Misconduct**

105.  In addition to having previously infringed Plaintiffs' intellectual property rights, Defendants are repeated, prolific infringers of the intellectual property rights of others. Court records show that Banaszewski has been sued at least three separate times for similar unlawful activity.

106.  On or about January 27, 2015, the National Academy of Recording Arts & Sciences (aka "The Recording Academy" and producer of the Grammy's) filed suit against Banaszewski for trademark infringement, copyright infringement, false association, unfair competition, interference with contractual relationships, unfair or deceptive business practices under state law, and inducement of trespass arising out of false and misleading representations in relation to the unauthorized offer for sale and sale of non-public tickets to The Recording Academy's Grammy Awards ceremony. *See National Academy of*

*Recording Arts & Sciences, Inc. v. Hollywood Entertainment Group, LLC et al.*, Case No. 2:15-cv-00594-JFW-AFM (C.D. Cal.). In that case, the Court permanently enjoined Banaszewski from, amongst other things, advertising, offering to sell and/or selling tickets to any event related to the Grammy Awards, and using or displaying any trademarks or copyrighted material owned by the National Academy of Recording Arts & Sciences.

107.   On or about November 6, 2015, Victoria's Secret Stores Brand Management, Inc. filed suit against Banaszewski for trademark infringement, trademark dilution, copyright infringement, unfair competition, and interference with contract in relation to the offering for sale and sale of unauthorized tickets to the Victoria's Secret Fashion Show. *See Victoria's Secret Stores Brand Management, Inc. v. Hollywood Entertainment Group LLC et al.*, Case No. 2:15-cv-08704-RGK-AS (C.D. Cal.). In that case, the Court permanently enjoined Banaszewski from, amongst other things, advertising, offering to sell and/or selling tickets to any future Victoria's Secret Fashion Show and/or the pre- and post-ceremony events, and using or displaying any trademarks or copyrighted material owned by the plaintiff.

108.   On December 21, 2016, Disney Enterprises, Inc., together with a number of other entertainment companies, filed suit against Banaszewski for trademark infringement, copyright infringement, unfair or deceptive acts or practices, and inducement of trespass in relation to the sale of unauthorized tickets to private events, such as the premier and afterparty to *Star Wars: Episode VII – The Force Awakens* and other private invitation-only events and tapings for various motion pictures and television programs. *See Disney Enterprises, Inc. et al. v. Hollywood Entertainment Group LLC et al.*, Case No. 2:16-cv-09432-JFW-MRW (C.D. Cal.). In that case, the Court permanently enjoined Banaszewski from, amongst other things, advertising, offering to sell and/or selling tickets to any events produced or presented by or affiliated with the plaintiffs, and using or displaying any trademarks or copyrighted material owned by the plaintiffs.

109. Given Banaszewski's receipt of the 2015 Letter and participation in the aforementioned lawsuits relating to nearly identical causes of action against Banaszewski, Defendants' actions were and are undertaken knowingly, willful, and wantonly.

110. Unless restrained and enjoined by this Court, Defendants will continue to infringe Plaintiffs' Marks and copyright and offer to sell and sell Coachella Festival and Stagecoach Festival passes to the unwitting public, upon which sales or transfers are void.

## HARM TO PLAINTIFFS AND THE GENERAL PUBLIC

111. Defendants' unauthorized use of Plaintiffs' Marks creates a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendant's Coachella and Stagecoach Festival passes, and is likely to falsely suggest a sponsorship, connection, license, or association of VIP and Banaszewski with Plaintiffs. Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and Plaintiffs' Marks.

112. Defendants' unauthorized distribution, reproduction, display, and inducement of the unlawful reproduction, distribution, and/or display of copyrighted 2023 Coachella Lineup Poster has caused, and will continue to cause CMF to suffer, substantial injuries, loss, and damage to its proprietary and exclusive rights in its copyrighted material, all in an amount not yet determined.

113. Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public who has an inherent interest in being free from confusion, mistake, and deception.

114. As a direct result of Defendants' false and unauthorized endorsement and misleading statements about the nature and qualities of the goods Defendants are offering to sell and/or are selling, Plaintiffs are suffering, and will continue to suffer, irreparable injury for which there is no adequate remedy at law. Defendants also harm the general public by advertising and selling passes that are unauthorized and void. Money damages cannot fully repair the damage that will be done to Plaintiffs' reputation and goodwill if

they must turn away would-be festival attendees because they have unwittingly purchased void passes from Defendants.

## **FIRST CAUSE OF ACTION**

### **(Trademark Infringement Under 15 U.S.C. § 1114(1))**

115. Plaintiffs reallege and incorporate by reference each of the allegations contained in the above paragraphs of this Complaint as though fully set forth here.

116. Plaintiffs' Marks are inherently distinctive, strong, valid, and protectable trademarks owned by Plaintiffs.

117. Defendants are infringing the COACHELLA Marks in connection with Defendants' unauthorized offering for sale and sale of Coachella Festival passes.

118. Defendants' use in commerce of the COACHELLA Marks is likely to cause confusion, mistake, or to deceive.

119. Defendants are infringing the STAGECOACH Marks in connection with Defendants' unauthorized offering for sale and sale of Stagecoach Festival passes.

120. Defendants' use in commerce of the STAGECOACH Marks is likely to cause confusion, mistake, or to deceive.

121. The above-described acts of Defendants constitute trademark infringement in violation of 15 U.S.C. § 1114(1), entitling Plaintiffs to relief.

122. Defendants have unfairly profited from the trademark infringement alleged.

123. By reason of Defendants' acts of trademark infringement, Plaintiffs have suffered damage to the goodwill associated with Plaintiffs' Marks, in an amount to be determined.

124. Defendants' acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and their federally registered trademarks.

125. Defendants' acts of trademark infringement have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public who has an interest in being free from confusion, mistake, and deception.

126.  By reason of Defendants' acts, Plaintiffs' remedy at law is not adequate to compensate for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to entry of a temporary restraining order against Defendants and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

127.  By reason of Defendants' willful acts of trademark infringement, Plaintiffs are entitled to treble damages under 15 U.S.C. § 1117.

128.  This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (Trademark Infringement, False Designation of Origin and Unfair Competition Under 15 U.S.C. § 1125(a))

129.  Plaintiffs reallege and incorporate by reference each of the allegations contained in the above paragraphs of this Complaint as though fully set forth here.

130.  Defendants' use in commerce of Plaintiffs' Marks is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendants' goods or services are authorized, sponsored, approved by, or affiliated with Plaintiffs.

131.  The above-described acts of Defendants constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a), entitling Plaintiffs to relief.

132.  Defendants have unfairly profited from the actions alleged.

133.  By reason of the above-described acts of Defendants, Plaintiffs have suffered damage to the goodwill associated with Plaintiffs' Marks in an amount to be determined.

134.  The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and Plaintiffs' Marks.

135.  The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

136.  By reason of Defendants' acts, Plaintiffs' remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

to entry of a temporary restraining order against Defendants and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

137.  Because the above-described acts of Defendants were willful, Plaintiffs are entitled to treble damages under 15 U.S.C. § 1117.

138.  This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### (Copyright Infringement Under 17 U.S.C. § 101 *et seq.*)

139.  Plaintiffs reallege and incorporate by reference each of the allegations contained in the above paragraphs of this Complaint as though fully set forth here.

140.  Defendants' acts constitute infringement of CMF's registered copyright in 2023 Coachella Lineup Poster in violation of the Copyright Act, 17 U.S.C. § 101, *et seq.*

141.  Plaintiffs are informed and believe, and on that basis allege, that Defendants' distribution, reproduction, display, and inducement of the unlawful reproduction, distribution, and/or display of the copyrighted 2023 Coachella Lineup Poster was deliberate, willful, malicious, oppressive, and without regard to CMF's proprietary rights.

142.  Defendants' copyright infringement has caused, and will continue to cause, CMF to suffer substantial injuries, loss, and damage to its proprietary and exclusive rights to 2023 Coachella Lineup Poster and has damaged CMF in an amount not yet determined. CMF is entitled to receive the profits made by Defendants from their wrongful acts pursuant to 17 U.S.C. § 504, or, alternatively, CMF is entitled to recover statutory damages, on election by CMF, in an amount of up to $150,000 for each copyrighted work sold, offered for sale, or distributed.

143.  Defendants' copyright infringement, and the threat of continuing infringement has caused, and will continue to cause CMF repeated and irreparable injury. It would be difficult to ascertain the amount of money damages that would afford CMF adequate relief at law for Defendants' acts and continuing acts. CMF's remedy at law is not adequate to compensate it for the injuries already inflicted and further threated by Defendants.

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

Therefore, CMF is entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502, and to an order under 17 U.S.C. § 1651(a) that infringing copies of 2023 Coachella Lineup Poster, and all digital copies and links thereto by which such infringing copies were produced, be seized, impounded, and destroyed.

144.  CMF is also entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

## FOURTH CAUSE OF ACTION

**(Unfair or Deceptive Acts or Practices in Violation of Cal. Bus. & Prof. Code §§ 17200 & 17500 and California Common Law)**

145.  Plaintiffs reallege and incorporate by reference each of the allegations contained in the above paragraphs of this Complaint as though fully set forth here.

146.  Plaintiffs are informed and believe that Defendants are in direct competition with Plaintiffs.

147.  Defendants' willful, knowing, and unauthorized promotion, advertisement, sale and offering for sale of infringing services causing confusion as to the source of the services and causing harm to Plaintiffs' goodwill is an unlawful appropriation of Plaintiffs' exclusive rights in Plaintiffs' Marks and Copyright.

148.  Members of the public are likely to be confused and deceived into believing that if they purchase Coachella Festival passes from Defendants, they are welcome to attend the Coachella Festival and enter into non-public areas of the festival.

149.  Members of the public are likely to be confused and deceived into believing that if they purchase Stagecoach Festival passes from Defendants, they are welcome to attend the Stagecoach Festival and enter into non-public areas of the festival.

150.  Defendants' conduct in offering to sell and/or selling Coachella and Stagecoach Festival passes constitutes an inducement to authorized pass holders, such as the Doe Defendants, to breach their contracts with Plaintiffs, and an inducement to the purchasers of such passes to commit a trespass.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

151.  At all relevant times, Defendants have been aware that the Coachella and Stagecoach Festivals are private events, that Plaintiffs do not permit the resale or transfer of passes to these private events, and that pass holders who obtained their passes from Defendants possess void passes and are be subject to eviction from the relevant festival as trespassers. Nevertheless, Defendants have offered to sell and/or have sold such passes and continue to sell and/or offer for sale such passes.

152.  Members of the public are likely to be confused and deceived into believing the passes they purchase from Defendants are genuine and that, if they purchase Coachella Festival or Stagecoach Festival passes from Defendants, they will be welcome at the festival to which they have purchased passes, including in certain instances to non-public areas of those festivals.

153.  Defendants' conduct as described herein constitutes unfair competition, including unfair or fraudulent business acts or practices and misleading advertising, in violation of California Business and Professions Code §§ 17200 and 17500, and under the common law of the State of California.

154.  Pursuant to California Business and Professions Code § 17203, Defendants are required to disgorge and restore to Plaintiffs all profits and property acquired by means of Defendants' unfair competition with Plaintiffs.

155.  Due to Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable harm. It would be difficult to ascertain the amount of money damages that would afford Plaintiffs adequate relief at law for Defendants' acts and continuing acts. Plaintiffs' remedy at law is not adequate to compensate them for the injuries already inflicted and further threatened by Defendants. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief pursuant to California Business and Professions Code § 17203.

156.  Defendants' conduct has been intentional and willful and in conscious disregard of Plaintiffs' rights and, therefore, Plaintiffs are entitled to exemplary or punitive

damages under the common law of the State of California in an amount appropriate to punish Defendants and to make an example of them to the community.

## FIFTH CAUSE OF ACTION

### (Common Law Tortious Interference of Contractual Relationships)

157. Plaintiffs reallege and incorporate by reference each of the allegations contained in the above paragraphs of this Complaint as though fully set forth here.

158. Based on the Terms contained on Plaintiffs' wristbands and website prohibiting unauthorized transfer of Coachella and Stagecoach Festival passes, Banaszewski and his co-Defendants have been and are aware of contracts between Plaintiffs and authorized pass holders, which provide that the passes are nontransferable and void upon unauthorized transfer.

159. Upon information and belief, Defendants intentionally induced and encouraged, and continue to induce and encourage, authorized pass holders to breach their contracts by transferring and/or selling Coachella Festival passes to Defendants. Defendants did so, and continue to do so, with the intent to interfere with and disrupt the contractual relationships between Plaintiffs and authorized Coachella Festival pass holders. Defendants induced, and unless enjoined, will continue to induce, such authorized Coachella Festival pass holders to breach their contracts with Plaintiffs. Defendants' conduct has denied, and will continue to deny, Plaintiffs the full benefits of the contracts with authorized Coachella Festival pass holders.

160. Upon information and belief, certain authorized Coachella Festival pass holders have in fact breached, or intend to breach, their contracts with Plaintiffs by obtaining Coachella Festival passes with no intention of honoring the obligations and restrictions on transfer contained therein, and then by transferring and/or selling the Coachella Festival passes to Defendants. These pass holders have in fact repudiated those obligations and restrictions.

161. Upon information and belief, Defendants intentionally induced and encouraged authorized pass holders to breach their contracts by transferring and/or selling

Stagecoach Festival passes to Defendants. Defendants did so with the intent to interfere with and disrupt the contractual relationships between Plaintiffs and authorized Stagecoach Festival pass holders. Defendants induced, and unless enjoined, will continue to induce, such authorized Stagecoach Festival pass holders to breach their contracts with Plaintiffs. Defendants' conduct has denied, and will continue to deny, Plaintiffs the full benefits of the contracts with authorized Stagecoach Festival pass holders.

162. Upon information and belief, certain authorized Stagecoach Festival pass holders have in fact breached, or intend to breach, their contracts with Plaintiffs by obtaining Stagecoach Festival passes with no intention of honoring the obligations and restrictions on transfer contained therein, and then by transferring and/or selling the Stagecoach Festival passes to Defendants. These pass holders have in fact repudiated those obligations and restrictions.

163. As a result of Defendants' conduct as described herein, Plaintiffs have suffered actual and compensatory damages in an amount to be determined at trial.

164.  Defendants' conduct as described herein constitutes tortious interference with Plaintiffs' aforementioned contractual relationships with authorized Coachella Festival and/or Stagecoach Festival pass holders.

## SIXTH CAUSE OF ACTION

### (Inducement of Trespass)

165. Plaintiffs reallege and incorporate by reference each of the allegations contained in the above paragraphs of this Complaint as though fully set forth here.

166. Plaintiffs have obtained the rights to the Empire Polo Club for the 2023 Coachella Festival and 2023 Stagecoach Festival and have and will have the right to the exclusive possession of such venue during the days and times of the Coachella Festival and the Stagecoach Festival.

167. Permission to enter the Coachella Festival and/or the Stagecoach Festival, including its related areas, is restricted to Plaintiffs' invitees and other specified individuals.

168. Members of the public who purchase Coachella Festival and/or Stagecoach Festival passes in violation of the restriction on transfer will be trespassers, as will Defendants for causing the trespass.

169. By enabling members of the public to attend Coachella Festival and/or Stagecoach Festival and enter into non-public areas, through the use of non-public credentials, Defendants have intentionally and wrongfully intruded, and will continue to intrude, into a private event and non-public areas.

170. Defendants' conduct as described constitutes an inducement of trespass by those members of the public who purchase Coachella Festival and/or Stagecoach Festival passes from Defendants.

171. Plaintiffs have suffered, and will continue to suffer, damage resulting from Defendants' unjustified and wrongful conduct. Such damage includes the trespass into the Coachella Festival and/or the Stagecoach Festival by people who are not authorized pass holders, interference with Plaintiffs' efforts to protect against potential security breaches, and harm to Plaintiffs' goodwill and reputation caused by the negative publicity associated with the need to exclude and eject unauthorized pass holders from entering the private event. Such damage is incalculable and irreparable. Plaintiffs are, therefore, entitled to preliminary and permanent injunctive relief.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendants as follows:

1.  That the Court enter a judgment against Defendants that Defendants have:

    a.  Infringed the rights of Plaintiffs in Plaintiffs' Marks, which have been federally registered, in violation of 15 U.S.C. § 1114(1);

    b.  Infringed the rights of Plaintiffs in Plaintiffs' Marks in violation of 15 U.S.C. § 1125(a);

    c.  Infringed Plaintiffs' copyright in the 2023 Coachella Lineup Poster that has been federally registered, in violation of 17 U.S.C. § 501.

    d.  Interfered with Plaintiffs' contractual relationships in violation of

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

California common law;

e.  Induced trespass in violation of California common law; and

f.  Engaged in unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.* and California common law.

2.  That each of the above acts was willful.

3.  That the Court issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Defendants and their agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from:

a.  Engaging in any activity that infringes Plaintiffs' trademark rights, including advertising, promoting, marketing, selling and offering for sale any goods or services in connection with Plaintiffs' Marks including but not limited to the COACHELLA Marks, the STAGECOACH Marks, or any confusingly similar mark;

b.  Engaging in any activity that infringes Plaintiffs' copyrights, including reproduction, distribution, adaptation, publication, and display of the copyrighted 2023 Coachella Lineup Poster or other festival artwork;

c.  Offering or attempting to offer to buy, sell, trade, or transfer, or soliciting the purchase, sale, trade, or transfer of, any pass, or anything entitling access to any part of the Coachella or Stagecoach Festivals;

d.  Attempting to induce any individual or party to violate the terms of use for passes to Coachella or Stagecoach Festivals;

e.  Participating in, aiding, or inducing, or attempting to participate in, aid, or induce, any effort by any person to trespass or gain unauthorized entry into any part of the Coachella or Stagecoach Festivals;

f.  Advertising or publishing any offer to purchase, sell, trade, or transfer relating to the purchase, sale, trade, or transfer of passes, or anything entitling access to any part of the Coachella or Stagecoach Festivals;

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

g. Making any false or misleading statements regarding the Coachella or Stagecoach Festivals, including regarding availability of tickets;

h. Receiving any compensation, whether in money, in kind, or otherwise, for any of the acts proscribed in subparagraphs (a)-(g) above;

i. Engaging in any unfair competition with Plaintiffs; and

j. Engaging in any deceptive acts.

4. Requiring Defendants, their agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, to: (a) engage in corrective advertising; (b) inform consumers that Defendants are not authorized to sell Coachella Festival passes, and any unauthorized transfer or sale of Coachella Festival passes is unlawful, may automatically render the passes void, and subject the pass holders to ejection from the Coachella Festival as trespassers; and (c) return and refund to all consumers all sums paid to Defendants for Coachella Festival passes.

5. Requiring Defendants, their agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, to: (a) engage in corrective advertising; (b) inform consumers that Defendants are not authorized to sell Stagecoach Festival passes, and any unauthorized transfer or sale of Stagecoach Festival passes is unlawful, will automatically render the passes void, and subject the pass holders to ejection from the Stagecoach Festival as trespassers; and (c) return and refund to all consumers all sums paid to Defendants for Stagecoach Festival passes.

6. Requiring Defendants, their agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, to immediately disclose to Plaintiffs any and all past and present sources of Coachella Festival passes (both backstage and public), including to the 2023 Coachella Festival, that Defendants have reserved for sale, offered to sell, and/or sold or otherwise transferred or attempted to transfer.

7.    Requiring Defendants, their agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, to immediately disclose to Plaintiffs any and all past and present sources of Stagecoach Festival passes (both backstage and public), including to the 2023 Stagecoach Festival, that Defendants have reserved for sale, offered to sell, and/or sold or otherwise transferred or attempted to transfer.

8.    That Plaintiffs be awarded damages for Defendants' trademark infringement and unfair competition and that these damages be trebled due to Defendants' willfulness, in accordance with the provisions of 15 U.S.C. § 1117.

9.    That Plaintiffs be awarded all profits resulting from Defendants' infringement of Plaintiffs' rights and by means of Defendants' unfair competition with Plaintiffs.

10.   That CMF be awarded damages for Defendants' copyright infringement in the form of either: (i) actual damages in an amount to be determined at trial, together with Defendants' profits derived from its unlawful infringement of CMF's copyright; or (ii) statutory damages for each act of infringement in an amount provided by law, as set forth in 17 U.S.C. § 504, at Plaintiffs' election before the entry of final judgement.

11.   That Defendants be ordered to account for and disgorge to Plaintiffs all amounts by which Defendants have been unjustly enriched by reason of Defendants' unlawful actions.

12.   That Plaintiffs be awarded punitive damages by reason of Defendants' unlawful actions.

13.   For pre- and post-judgment interest on all damages.

14.   That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, California law, and any other applicable provision of law.

15.   That the Court award Plaintiffs their costs of suit incurred herein.

16.   For such other or further relief as the Court may deem just and proper.

DATED: April 3, 2023                    Tucker Ellis LLP


By:    /s/ David J. Steele
       David J. Steele
       Steven E. Lauridsen
       Dina Roumiantseva

       *Attorneys for Plaintiffs*
       *Coachella Music Festival, LLC,*
       *Future Festivals, LLC, and*
       *Goldenvoice, LLC*

## DEMAND FOR TRIAL BY JURY

Plaintiffs Coachella Music Festival, LLC, Future Festivals, LLC, and Goldenvoice, LLC hereby demand a trial by jury to decide all issues so triable in this case.

DATED: April 3, 2023                    Tucker Ellis LLP


By:     /s/ David J. Steele
        _____
        David J. Steele
        Steven E. Lauridsen
        Dina Roumiantseva

        *Attorneys for Plaintiffs*
        *Coachella Music Festival, LLC,*
        *Future Festivals, LLC, and*
        *Goldenvoice, LLC*